FREDERICK W. BURNHAM, Appellant, *v.* THE CITY OF CHICAGO, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

The Superior Court of Chicago has authority to appoint special terms.

A judgment, entered as of the January special term, instead of the regular February term, by mistake of the clerk, will not be reversed on account of such mistake.

The only reason for sending to this court a copy of the publication of the notice of the collector of an assessment, is to show, that the court had personal jurisdiction of the parties; when the record shows that they have appeared and contested the proceeding, such copy is needless.

The charter gives the common council of the city of Chicago power to assess for graveling streets. The word "pavement," as used in the charter, defined.

When the court below has found that an assessment was made fairly and in good faith, this court will not disturb such finding without great reluctance; although the valuation might be so extravagant and unjust as to furnish good ground for a reversal.

THIS was a proceeding to levy a special assessment in the city of Chicago, heard before the Superior Court of that city. It was resisted by the appellant and others, for the following reasons:

Because the assessment made on said lots was made in accordance with what they were deemed benefited, and not in accordance with the value of the property assessed; and without reference to the assessment being uniform in respect to persons and property assessed within the jurisdiction of the body making the assessment; and is therefore unconstitutional and void.

Said lots were assessed knowingly, fraudulently, and intentionally, upon a valuation of from two to three times the real and true value of said lots at the time of making said assessment.

Said lots were taxed for said improvement, above named, from five to ten per cent. per annum on the value of the property assessed, and of the value of said lots.

There was no assessment roll published by the city clerk upon the return of the assessment roll to him by the special assessor, as required by section 3rd of an " Ordinance concerning assessments for public improvements," showing the names of the owners of the property or a description of said lots assessed for said improvement, prior to the confirmation of said assessment by the common council.

That there was not fifty per cent. of the cost for said graveling of South street paid into the city treasury before the work was commenced.

The city charter gives no power to the common council to assess for graveling streets.

The court, after hearing the evidence, some of which tended to prove that the valuation of the property was much greater than it was really worth, gave judgment for the city, and Burnham appeals to this court, other parties who were interested in the matter, having entered into a stipulation that their cases should abide the decision of the Supreme Court in the case of Burnham.

WHITE & WILLIAMS, and JESSE B. THOMAS, for Appellant.

ELLIOT ANTHONY, for Appellee.

CATON, C. J. The legality of the special term at which this application for judgment was made, may be properly first considered. Had there been no change in the Court of Common Pleas, there would have been no question made of the right of the court to call this special term. That court was vested with express power to call special terms at its discretion, the same as the Circuit Courts. The act of the last session changed the name of the court, provided for the election of two more judges, made the judge of the Common Pleas chief justice of the Superior Court, required it to hold monthly, instead of quarterly, terms, and declared that the court should continue, with all its powers, jurisdiction and authority, with the additional jurisdiction conferred by the new act. This power to call special terms was then expressly continued to the court, unless the other provisions of the act forbid its exercise. The new law required a monthly term of the court to be held, which was authorized to continue till the last Saturday of the month, and longer, if necessary to complete a trial already commenced. This, it is insisted, practically took away the power to call special terms,

32

by allowing no time out of the regular terms in which they could be held. This point was substantially decided, and the objection overruled, in the case of *Mattingly* v. *Darwin*, 23 Ill. R. 618, decided at the last term in the second division. We there held, that a circuit judge, foreseeing that he could not hold the regular term of his court, as appointed by law, might appoint a special term at any convenient time after the time at which the law required him to hold the regular term, for the purpose of disposing of the business pending in court, and which he should have disposed of at the regular term. The law which requires the circuit judges to hold their courts at stated times, also requires them to continue their terms till all of the business is disposed of, but this from necessity is only directory, as many contingencies may occur which may prevent a compliance with it. A state of things might exist by which the judges of this court could clearly foresee that it would be impossible for them to hold a regular term on the first Monday of the month, but that they could hold it on the third Monday, or on some other day during the month. In such a case, if we were right in the decision of the case referred to, it would be competent for them to appoint a special term to be held at any convenient time, not however, of course, to commence on the same day of a regular term, for then the regular term would supercede the special term, and the appointment of the special term would be a nullity. This special term was good, and might continue to be held till the first Monday of the succeeding month, when, of course, it would expire, and all subsequent proceedings in the court would be of the regular, instead of the special, term. The cases referred to, where this court held that the appointments of special terms of Circuit Courts were void, had reference to special terms appointed to be held on a day when the law had appointed a regular term in another county of the same circuit — cases quite different from this. We think the appointment of this special term was valid.

The next objection is, that the clerk has entered the judgment as of the January special term, instead of the regular February term, during which it was in fact rendered. No question is or can be made, that the court, when it rendered this judgment, had not jurisdiction to hear and determine the cause, and to render the judgment; and the question is, whether we shall reverse a judgment regularly entered by a court having jurisdiction to render the judgment, simply because the clerk misnamed the term of the court. Such misnomer could not vitiate a judgment which was in itself regular, proper and binding on the parties. We are of opinion that this objection cannot prevail.

The next is the objection, that the record, as sent up, did not contain a copy of the publication of the notice of the collector that he would apply for this judgment. If this notice was designed by the law to take the place of a summons to the parties interested, the only necessity for its appearing in the record would be to show that the court had jurisdiction of the persons interested in the land, and who were authorized to appear and defend the cause. Their appearance and the defense interposed by them, gave the court personal jurisdiction, and that it had jurisdiction of the subject matter, there is no question, since that is expressly given by the law. The notice, however, has been sent up.

The next point which we deem it necessary to consider is, that this improvement was not one of those mentioned in the statute, for which the common council is authorized to levy a special assessment. This objection arises from a misapprehension of the extent of the meaning of the word *pavement.* A pavement is not limited to uniformly arranged masses of solid material, as blocks of wood, brick, or stone, but it may be as well formed of pebbles, or gravel, or other hard substance, which will make a compact, even, hard way or floor. So is the word defined by lexicographers, and so is it understood by well informed persons in ordinary intercourse. Macadamizing is one mode of paving, deriving its name from the man who invented that particular mode. We think the improvement is not only within the spirit and intention, but within the express letter of the law.

The last objection which we shall notice, has created the most serious doubts in our minds, as to the propriety of affirming this judgment. It is the high valuation, by the commissioners, of the property assessed. The proof shows that it was very greatly above its real value, and induces a very violent suspicion, that the valuation was not the result of the deliberate judgments of the commissioners, but of some ulterior influence or consideration, and had the court below found it fraudulent, we should have cheerfully approved its decision. But we have great reluctance, when the court below has found that the assessment was made fairly and in good faith, to say, from a simple excess of valuation, that it was fraudulent. We will not say that the commissioners might not put so extravagant a valuation upon the property as to induce us to reverse, for that cause alone; but we will not commence with this case. Nor can we inquire how many times the commissioners went on to the land to view it, or how much they discussed, and canvassed, and deliberated on the subject before coming to a conclusion. There must be a limit to these collateral inquiries.

The other questions presented in this case have been decided in the others, and we do not think it necessary to go over them in detail.

The judgment is affirmed.

*Judgment affirmed.*