McCALEB, Justice.
 

 The defendants, John Allen and Dan 'Tobias, having been charged, in a bill of information, with the grand larceny of •an automobile valued at $250, were tried •and convicted of the offense. Tobias was sentenced to imprisonment at hard labor for two to six years and Allen was sentenced as a second offender to serve from ten to twenty years at hard labor. They have appealed.
 

 The grounds for reversal of the convictions are contained in a bill of exceptions which was reserved to the refusal of the district judge to sustain an objection to the admissibility of certain oral confessions purportedly made by the defendants and to the court’s denial of a motion for a new trial. Another alleged error, which is claimed to be patent on the face of the record, is also urged.
 

 The main question presented by the bill of exceptions refers to the admissibility of the oral confessions, it being defendants’ contention that the State has failed to affirmatively show that these statements were free and voluntary as prescribed by Article 451 of the Code of Criminal Procedure.
 

 The evidence discloses that the confessions were given under the following circumstances :
 

 The automobile was stolen on November 21, 1941. The defendants were not arrested for the theft at that time, but later, on or about January 5th, 1942, they were taken into custody by the New Orleans Police on other charges. Allen was confined to the Twelfth Precinct Police Station and Tobias was placed in the Seventh Precinct. Captain William Bell of the New Orleans Police testified in substance that, on January 10, 1942, or five days after the men had been taken into custody, Allen requested an interview with him; that Allen told him that he would like to make a statement with respect to the theft of the automobile; that he drove Allen in a police car (at Allen’s direction) to the place where the theft had been committed; that after visiting the scene, Allen was taken to the First Precinct Station; that Tobias was also brought there and that both Allen and Tobias stated that they had stolen the automobile and exonerated one Leblanc who had been previously suspected of the crime. The witness further asserted that the statements of the defendants were made freely and that neither of them had been coerced in any manner or offered any hope of reward.
 

 The evidence of Captain Bell is fully corroborated by the testimony of Sergeant Edward Rooney and Officer Joseph Vittari of the New Orleans Police Force, who were present at the time the statements by Tobias and Allen were made. These witnesses say
 
 *692
 
 that the confessions were spontaneous and that neither of defendants were coerced by promises or threats of any nature.
 

 Neither of the defendants saw fit to introduce evidence tending to contradict the testimony of the police officers with respect to the circumstances and conditions under which the oral confessions were given. However, their counsel contend that the State has failed to establish that the statements were voluntary, maintaining that the testimony of the police officers must be-regarded as negative in character since it does not affirmatively appear from the State’s evidence that the defendants were not previously interviewed by other officers during the five days they were in jail and that those officers did not threaten the defendants or make promises to them which induced them subsequently, to admit their guilt to Captain Bell. In support of this proposition, counsel place great reliance upon our recent decision in State v. Henry, 196 La. 217, 198 So. 910, 916, wherein it was held that certain confessions made by the accused were inadmissible because the State failed to show affirmatively that they were voluntarily made.
 

 The testimony relating to the circumstances under which the confession was given in the Henry case is vastly different from the instant matter. There, it appeared from the evidence produced by the State that the defendant went to her aunt and told her: “I shot a man.” Thereafter, upon the promise of the aunt that, if the defendant would tell the whole truth about the killing, she would do all in her power to help the defendant and would also endeavor to get her brother (the defendant’s uncle), Captain McQuistion of the Louisiana State Police, to help the defendant obtain a life sentence instead of the death penalty, the defendant related to her aunt the circumstances and details of the murder. The aunt then caused the arrest of the defendant by Captain McQuistion. Upon being taken into custody by McQuistion, the defendant talked privately with him for some time. After this interview, she came out of the room where the conversation had taken place and then, upon McQuistion’s instructions, she told two other officers of the State Police the details of the killing of Mr. Calloway with whose murder she was charged.
 

 The two officers of the State Police, to whom the confession was given, stated that they had made no promises or inducements to the defendant which prompted her to confess and that they used no coercion whatever. However, they also testified that they did not know whether any promises had been made by Captain McQuistion, who had interviewed the defendant .just prior to the time the confession was given. And it further appeared in the case that for some reason Captain McQuistion, although summoned as a State witness, did not testify relative to the conversations he had with the defendant.
 

 Under the foregoing circumstances, we ruled that the State had not affirmatively proved that the confession of the defendant had been given voluntarily. But there, it was clearly shown from the evidence produced by the State itself that there was
 
 *694
 
 some inducement offered to the defendant in consideration for the confession.
 

 No such facts exist in the case at bar. In his per curiam, the trial judge states that:
 

 “There was not a scintilla of evidence adduced at the trial of this case, on behalf of defendants, to show that they or either of them had been forced to make or • intimidated into making an oral confession admitting that they had stolen the automobile involved in this case.”
 

 The mere fact that the defendants in the instant case had been in custody for four or five days prior to the time they made the confessions cannot be relied upon as an argument that the State has not proved affirmatively that the statements were given freely and voluntarily. It was not incumbent upon the State to produce every officer, who had charge of the defendants prior to the time they confessed, and to prove by those officers that they did not threaten or otherwise induce the defendants to admit their guilt. It sufficed, we think, in order to make an affirmative and prima facie showing for the admission of the confessions in evidence, for the State to prove by the officers to whom the confessions were given that they did not coerce the defendants or induce them to make the statements. When this was done, the confessions were properly receivable in evidence, in the absence of contradictory proof.
 

 The decision in the Henry case is not in discord with this view. What was said in that matter was appropriate to the particular circumstances there presented revealing beyond any doubt that some sort of representation had been made to the accused which may have had some bearing upon the confession subsequently obtained.
 

 This case is on all fours with the decision of this Court in State v. Nattalie, 163 La. 641, 112 So. 514, 516. There the defendant objected to a confession made by him to the District Attorney in the Sheriff's office while defendant was under arrest on the ground that the State had not first proved that the officers in charge of defendant had not induced the confession through threats or promises. In upholding the ruling of the trial judge in admitting the confession in evidence, we said:
 

 “Defendant did not request the court to have the officers who had arrested defendant called and placed upon the stand to rebut the prima facie showing made by the state that the confession had been given spontaneously; but merely reserved a bill to the ruling admitting the confession in evidence.”
 

 The other matters complained of in the bill of exceptions taken by the defendants refer to the alleged error of the judge in overruling their motion for a new trial. The specific complaints relate entirely to the sufficiency of the evidence which was presented to the jury. These are matters which we cannot review under our appellate jurisdiction which is restricted to questions of law alone in criminal cases. Constitution of 1921, Article VII, Section 10.
 

 Finally, counsel urge us to set aside the convictions because of certain alleged prej
 
 *696
 
 udicial comments which were made by the district attorney during the course of the trial.
 

 It appears from the record that, while the judge was hearing argument concerning the admissibility of the confessions of the defendants in evidence, the prosecuting attorney made the following statement:
 

 “These defendants were not arrested in connection with this case until January 10th. Mr. Lozes says he is not interested in Mr. Vittari. Further, these defendants have sat here and no testimony has been offered to contradict the testimony of Captain William Bell or Officer Rooney.”
 

 When this statement was made, counsel for the defendants moved for a mistrial. The court denied the motion and instructed the jury to disregard the remarks of counsel “which have just taken place”.
 

 The ruling was correct. The prosecuting attorney was not commenting upon the defendants’ failure to offer evidence on the merits of the case in contradiction of the proof tendered by the State. The remarks were made during the course of the prosecuting attorney’s argument to the court that the confessions were admissible in evidence'. The defendants could have requested the court to have the jury withdrawn while the argument on this question of law was being made, but they did not see fit to do so. Furthermore, the judge, in overruling the motion for a mistrial, immediately instructed the jury to disregard the remarks of the prosecuting attorney and, later, in his general charge to the jury, he specifically instructed them that they should be guided solely by the evidence produced in the case and that the fact that defendants did not take the stand in their own behalf should not be considered in determining their guilt or innocence.
 

 For the reasons assigned, the convictions and sentences appealed from are affirmed.